IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

KATRINA S. WALLACE,
    Plaintiff,

v.

JEREMY MOST *et al.*,
    Defendants.

Case No. 2:24-cv-02158-JEH

**Order**

    Before the Court is a Motion for Summary Judgment (Doc. 31) filed by Defendants Katrina Adams, Meghan Marcotte, and Jeremy Most. Plaintiff Katrina S. Wallace[1], an inmate at Logan Correctional Center, did not file a response. For the following reasons, Defendants' dispositive motion is granted.

**I**

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come

---

[1] Plaintiff testified that he was named Treyvon and prefers he/him pronouns. (Pl. Dep., Doc. 28-1 at 10.) Consistent with Plaintiff's preference, the Court will refer to Plaintiff with male pronouns.

forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

"When opposing a properly supported motion for summary judgment, the non-moving party must 'cit[e] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence … of a genuine dispute.'" *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). All facts must be construed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence supporting the nonmovant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

## II

In April 2024, Plaintiff filed a complaint (Doc. 1) under 42 U.S.C. § 1983, alleging that Corporal Most and Corrections Officers Adams and Marcotte violated Plaintiff's constitutional rights during his detention at Jerome Combs Detention Center ("JCDC"). After screening, the Court determined that Plaintiff stated an excessive force claim against Most and failure-to-intervene claims against Adams and Marcott. (*Id.*)

## III

### A

Section 7.1(D)(2) of the Court's Local Rules outlines the requirements when responding to a Motion for Summary Judgment, which mandates addressing each of Defendants' material facts and noting which are undisputed material facts, disputed material facts, disputed immaterial facts, or undisputed immaterial facts.

Civil LR 7.1(D)(2)(b)(1-4). Plaintiff may also add material facts in opposition to the filing. (*Id*. at 7.1(D)(2)(b)(5)). As earlier noted, Plaintiff did not file a response.

Although Plaintiff's failure to respond to Defendants' dispositive motion requires the Court to deem Defendants' factual assertions admitted under Local Rule 7.1(D)(2)(b)(6), summary judgment in favor of the movant is not automatic. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("[A] nonmovant's failure to respond to a summary judgment motion, … does not, of course, automatically result in judgment for the movant.") The ultimate burden remains with Defendants to show that they are entitled to judgment as a matter of law. *Id*. Thus, the following material facts are based on Defendants' properly supported brief and the Court's review of the provided record.

B

In March 2023, Plaintiff entered JCDC as a federal pretrial detainee. (Most Aff., Doc. 33-1 at 1:5.) On June 29, 2024, Defendants Adams and Marcotte were delivering lunch trays at about 12:30 p.m. in the Max B housing unit. At that time, Plaintiff became irate and demanded an extra food tray. After distributing the food trays, Adams and Marcotte heard a loud bang and saw that Plaintiff had thrown his food tray out of his cell through the chuckhole, in violation of JCDC rules. Plaintiff then sat in front of his cell door with his arms hanging out the open chuckhole. (Adams Aff., Doc. 31-2 at 1-2:7-10; Marcotte Aff., 31-3 at 1-2:7-10.) Defendants explain that chuckholes must remain closed for safety and security reasons, per JCDC policy, as an open chuckhole can be used to exchange contraband, make bodily contact with others, or throw out items such as lunch trays or human excrement. (Most Aff., Doc. 31-1 at 2:13; Adams Aff., Doc. 31-2 at 2:14; Marcotte Aff., 31-3 at 2:14.)

Defendants Adams and Marcotte ordered Plaintiff to return his arms inside his cell, but Plaintiff refused. Plaintiff was angry because another detainee was

3

provided a second food tray. Adams and Marcotte explained that Plaintiff was in that housing unit for disciplinary reasons relating to assaulting and threatening staff and, as a result, was not eligible to receive additional accommodation, such as an extra food tray. Adams and Marcotte attempted to reason with Plaintiff to return his arms inside his cell, but Plaintiff continued to refuse and demanded to speak to a supervisor. Defendant Most responded. (Adams Aff., Doc. 31-2 at 2:11-13, 15-16; Marcotte Aff., 31-3 at 2:11-13, 15-16.)

The response to Plaintiff's request for a supervisor was recorded by cameras worn by Defendants Adams, Marcotte, and Most. The Court has reviewed the video and audio footage and provides a summary of the recording taken from Adams' camera, which captures the exchange between Plaintiff and Most.

At 12:43:00 p.m. on June 29, 2024, Defendant Most approached Plaintiff's cell. Plaintiff was sitting with his arms up to his elbows outside of the chuckhole. At Plaintiff's request, Most identified himself and bent over at the waist, placing his head closer to the chuckhole. Plaintiff explained that another detainee who had violated JCDC rules received an extra food tray, but he was denied one even though he had not committed any infractions. Most asked Plaintiff to put his arms back in his cell. When Plaintiff did not comply, Most grabbed both of Plaintiff's hands above the wrist and attempted unsuccessfully to push them back into the cell. Plaintiff tensed up and, in resisting Most, knocked the camera off Most's chest. Most then stood up, backed away from Plaintiff's cell door, and unholstered his Taser. (Adam Rec. 12:43:00-12:43:29.)

Defendant Most attempted to gain Plaintiff's compliance by discharging the Taser directly on the skin of Plaintiff's left forearm, which was initially unsuccessful. Plaintiff did not move either of his arms. Most then attempted a second time to discharge his Taser directly on Plaintiff's left forearm, which caused Plaintiff to flinch. Most then immediately applied the Taser to Plaintiff's right

4

forearm, which caused Plaintiff to flinch again, but his arms remained outside of the chuckhole. Plaintiff said nothing during this time. (*Id.* at 12:43:30-12:43:42.)

Defendant Most then holstered his Taser and attempted to reattach his camera. Most asked Plaintiff, "I don't know why you just can't put your hand back in?" During this time, Most spoke to Plaintiff in a conversational tone. Most walked away briefly from Plaintiff's cell but returned with his Taser unholstered and in his right hand. (*Id.* at 12:43:43-12:44:20.)

Defendant Most then ordered Plaintiff in a forceful, elevated tone to "get on the ground." Plaintiff remained with his arms located outside the chuckhole. Most then ordered Plaintiff to get back in the cell and grabbed Plaintiff's right arm with his left hand, but Plaintiff yanked his hand from Most's grasp. Most again attempted to gain compliance by placing the Taser on the skin of Plaintiff's left arm and discharging the Taser twice to no avail. (*Id.* at 12:44:21-12:44:34.)

At this point, Defendant Marcott, who attempted to assist Defendant Most, stated that Plaintiff had hit her. Plaintiff then tried unsuccessfully to swing at Most's right hand, and Most kicked on Plaintiff's cell door. Plaintiff then repeatedly yelled, "Keep it up." Most then discharged his Taser using darts that carry an electrical current. As Plaintiff dropped to the ground, Most ordered Plaintiff to get on his stomach. When Plaintiff did not comply, Most discharged a second set of electrical darts that missed hitting Plaintiff. Plaintiff then complied with Most's order to get on his stomach with his hands behind his back. Afterward, Plaintiff was cuffed and escorted walking away from his cell, screaming that he intended to file a lawsuit. (*Id.* at 12:44:35-12:46:12.) Plaintiff was placed in a restraint chair and seen by medical personnel, although Plaintiff did not complain of pain during or after the incident. (Most Aff., Doc. 31-1 at 4:35-36.)

Plaintiff testified that the body camera videos accurately depicted the events giving rise to his claims, although Plaintiff believes that the videos prove his claims

5

against Defendants. (Pl. Dep., Doc. 28-1 at 31-32.) Plaintiff asserts that he experienced pain, bruising, and some bleeding, which were resolved within a few days. (*Id*. at 61-65.)

C

As a pretrial detainee, Plaintiff's excessive force claim arises under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's proscription against cruel and unusual punishment. *Estate of Cole v. Fromm*, 94 F.3d 254, 259 n.1 (7th Cir. 1996) (stating that the source of a pretrial detainee's constitutional rights is the Fourteenth Amendment's Due Process Clause).

To succeed on an excessive force claim under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). This standard is "consistent with" the objective standard for excessive force claims under the Fourth Amendment. *Id.* at 2474. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 2473 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This determination should be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

The Supreme Court has identified a non-exclusive list of factors that may bear on the reasonableness or unreasonableness of the force used:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

6

*Id.* (citing *Graham*, 490 U.S. at 396).

Defendant Most contends that he is entitled to summary judgment on Plaintiff's excessive force claims because the undisputed video evidence shows that he initially attempted to use verbal orders to gain Plaintiff's compliance, before opting to employ physical force, which he increased incrementally as Plaintiff persisted in his refusal to place his arms inside his cell as ordered.

In this regard, the reviewed video shows that Defendant Most initially asked Plaintiff to return his arms to the inside of his cell. When Plaintiff did not comply, Most grabbed Plaintiff's forearms to push them back in his cell. In response, Plaintiff resisted, knocking the recording camera from Most's chest. Most remained calm and unholstered his Taser, which Most explained is usually enough to garner compliance. (Most Aff., Doc. 31-1 at 3:24.) However, when Plaintiff would not relinquish control of the chuckhole, Most used his Taser to apply an electrical shock to Plaintiff's arms with no appreciable effect except for a momentary flinch.

Plaintiff continued his resistance by making physical contact with Defendant Marcott, who attempted to assist Defendant Most. At that point, Most opted to employ his Taser to send an incapacitating shock to Plaintiff, which finally resulted in Plaintiff's reluctant compliance. On this record, Defendant Most's decision to use a Taser was not objectively unreasonable given Plaintiff's disobedient and uncontrollable conduct, which had escalated to physical contact. *See Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009) ("In cases upholding the use of [T]aser guns, the victims have been violent, aggressive, confrontational, unruly, or presented an immediate risk of danger to themselves or others.").

Consequently, Plaintiff's failure to intervene claim against Defendants Adams and Marcotte necessarily fails as a matter of law. *See Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019) (holding that the plaintiff's failure to

intervene claim failed as a matter of law because he "failed to present evidence supporting an underlying violation"); *see also Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation . . . ."); *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) ("[T]here [is] no constitutionally impermissible failure to intervene [where] there [is] no violation that compelled intervention.").

Accordingly, the Motion for Summary Judgment filed by Defendants Adams, Marcotte, and Most is granted.

## IV

In light of the foregoing, the Court Orders as follows:

1) The Motion for Summary Judgment filed by Defendants Adams, Marcotte, and Most (Doc. 31) is GRANTED.

2) The Clerk of the Court is DIRECTED to enter judgment in favor of Defendants and against Plaintiff under Federal Rule of Civil Procedure 58.

3) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* MUST identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (stating that an appellant should be allowed to submit a statement of her grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith"); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good-faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: November 21, 2025

<u>s/Jonathan E. Hawley</u>
U.S. District Judge

8